AFFIRM; Opinion Filed November 14, 2012.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-11-01195-CR
No. 05-11-01196-CR

## JOSEPH DARRYL WILSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District Court
Dallas County, Texas
Trial Court Cause Nos. F09-60022-W and F09-60023-W

# OPINION

Before Justices O'Neill, FitzGerald, and Lang-Miers
Opinion By Justice Lang-Miers

In two cases arising out of the same incident and consolidated for trial, a jury convicted appellant Joseph Darryl Wilson of burglary of a habitation and aggravated assault with a deadly weapon. The trial court assessed punishment in each case at 15 years in prison and ordered the sentences to run concurrently. In one issue on appeal appellant argues that his convictions "violate double jeopardy." We resolve appellant's issue against him and affirm.

At trial appellant and the two complainants each gave different accounts of what occurred on the night in question. In the interest of clarity, we summarize appellant's version first. According to appellant, his ex-girlfriend, Samantha Montelongo, called him around 7:30 p.m. and asked him

to come pick her up from her house. It was his understanding at the time that Samantha was pregnant with his baby. When he arrived Samantha was standing outside. Appellant got out of his car and asked Samantha where her clothes were. She went inside to get them and "a Mexican guy" ran outside, asked appellant who he was, and started pushing him. At that point the two men started fighting. Another person joined in and started beating up appellant. According to appellant he did not have a gun and he never went inside Samantha's house.

Samantha, on the other hand, testified that she had not talked to appellant for days and she did not think he knew where she was living until around 11:15 p.m. on the night in question. She and her boyfriend Carlos Gomez were lying in bed talking when a log suddenly flew through the bedroom window, breaking most of the glass. Appellant climbed through the broken window and said, "[C]ome get in the car with me." Samantha asked appellant to leave. Carlos told Samantha to go call the police, and Carlos and appellant started fighting. Samantha testified that she had not told appellant where she was living and did not ask appellant to come pick her up. Samantha also testified that she never saw appellant's gun. When she was questioned about why her written statement to police said that "Carlos got the gun from [appellant]," she explained to the jury that she lied to the police about seeing appellant's gun because she did not want Carlos to be mad at her "for not taking his side." During cross-examination, Samantha acknowledged that she signed an affidavit stating that she did not want to prosecute this case, and she explained, "The reason why is because I don't want him to go to prison. I believe people should get a second chance."

Carlos testified that he and Samantha were lying in bed when he saw something fly through the window that he later determined was a "two-by-four." Appellant came into the room with a gun in his right hand. Carlos thought it was just a "random burglary, robbery" until Samantha started yelling appellant's name and saying, "Joe, don't do it." Appellant said to Carlos, "[W]hat are you doing in bed with my woman, this is my woman." Next appellant pointed his gun at Carlos and tried

–2–

to shoot Carlos, but the gun did not fire. Carlos wrestled the gun away from appellant and tried to shoot him, but the gun did not fire. During his testimony Carlos was asked, "Are you certain that you saw a firearm in [appellant's] hand?" Carlos answered, "I'm very certain he had a gun when he came in."

Appellant was convicted of two offenses: burglary of a habitation and aggravated assault with a deadly weapon. Under the disjunctive application paragraph of the jury charge, the jury could convict appellant of burglary of a habitation under either of two theories: (1) entry with intent to commit aggravated assault with a deadly weapon; or (2) entry and commission or attempted commission of aggravated assault with a deadly weapon. The general verdict form did not require the jury to specify which theory it relied upon.

Appellant argues for the first time on appeal that he received multiple punishments for the same offense because the jury rested its verdict on the second burglary theory, which made the aggravated assault with a deadly weapon a lesser included offense of burglary. In response, the State argues that appellant failed to preserve his complaint for appellate review because he did not object to the disjunctive jury charge at trial. We agree with the State.

Generally, to preserve a multiple-punishments double jeopardy claim for appellate review, a defendant must object at or before the time the charge is submitted to the jury. *Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000). A timely objection allows the trial court and the prosecution an opportunity to remove the basis of the objection and allows the prosecution a chance to obtain a conviction "without the risk of an unnecessary retrial in the face of a valid multiple punishments claim." *Id.* at 645–46. An appellant is excused from this preservation requirement and allowed to raise a multiple-punishments double jeopardy claim for the first time on appeal only if two conditions are met: (1) the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record, and (2) enforcement of the usual rules of procedural default serves

—3—

no legitimate state interests. *Id.* at 643; *see also Langs v. State*, 183 S.W.3d 680, 682 (Tex. Crim. App. 2006) ("[T]he face of the trial court record must clearly show a double jeopardy violation before a defendant may successfully raise a 'multiple punishment' double jeopardy claim for the first time on appeal.").

One of the ways in which a multiple-punishments double jeopardy claim arises is in the lesser included offense context, in which the same conduct is punished twice—once for particular conduct, and a second time for that same conduct plus more (for example, attempted assault and assault of the same complainant in the course of the same criminal episode). *Langs*, 183 S.W.3d at 685. When a defendant is convicted of burglary and another felony committed during that burglary, whether the defendant's multiple punishments violate the Double Jeopardy Clause depends on the type of burglary charged. *Id.* at 686. For example, if the burglary allegation is that the defendant entered a habitation without the consent of the owner and then committed or attempted to commit assault within the habitation as defined in section 30.02(a)(3) of the penal code, then the assault is a lesser included offense of the burglary and the defendant may not be punished for both the burglary and the assault. *See id.* But if the burglary allegation is that the defendant entered a habitation without consent of the owner and with the intent to commit assault as defined in section 30.02(a)(1), then the burglary and the assault are two separate offenses and the defendant may be punished for both:

> The entry of the home with felonious intent and the felony committed within are two distinct criminal acts, and each requires the State to prove an element that the other does not. A person charged with burglary under Section 30.02(a)(1) is guilty of that offense the moment he crosses the threshold of a habitation without consent and with the intent to commit the underlying felony. It matters not whether he actually does commit that felony or even if he attempts to commit it.

*Id.* (footnote citations omitted).

When both theories of burglary described above are submitted to the jury disjunctively, a double jeopardy violation is not clearly apparent on the face of the record if there is sufficient

evidence to support the theory that would not constitute a double jeopardy violation. *Langs*, 183 S.W.3d at 687. Applying this law to the facts of this case, a double jeopardy violation would not be apparent on the face of the record if there is sufficient evidence to support the theory that appellant entered Samantha's home with the intent to commit aggravated assault with a deadly weapon.

Appellant argues that there is insufficient evidence that he entered Samantha's home with the intent to commit aggravated assault with a deadly weapon because Samantha's testimony indicates that the assault arose only when Samantha refused to leave with appellant. We disagree. According to Carlos's testimony, appellant threw a two-by-four through Carlos and Samantha's bedroom window, entered the bedroom with a gun in his hand, and tried to shoot Carlos. We conclude that there is sufficient evidence to support a finding that appellant entered the home with intent to commit aggravated assault with a deadly weapon. *See, e.g., Marci v. State*, 12 S.W.3d 505, 507 (Tex. App.—San Antonio 1999, pet. ref'd) (evidence was sufficient to prove defendant entered home with intent to commit aggravated assault because evidence showed defendant "hurled himself through a downstairs window of the house" and yelled "where is she, where is she" while carrying a knife and handgun). Because appellant could have been convicted under section 30.02(a)(1), a double jeopardy violation is not apparent on the face of the record. As a result, appellant has not met the first prong of the exception to the preservation requirement set forth in *Gonzalez*. 8 S.W.3d 643. We conclude that appellant has not preserved his double jeopardy claim for our review.

We resolve appellant's sole issue against him and affirm.

_____
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
111195F.U05

—5—



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOSEPH DARRYL WILSON, Appellant

No. 05-11-01195-CR          V.

THE STATE OF TEXAS, Appellee

Appeal from the 363rd Judicial District
Court of Dallas County, Texas. (Tr.Ct.No.
F09-60022-W).
Opinion delivered by Justice Lang-Miers,
Justices O'Neill and FitzGerald
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered November 14, 2012.

ELIZABETH LANG-MIERS
JUSTICE



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOSEPH DARRYL WILSON, Appellant

No. 05-11-01196-CR      V.

THE STATE OF TEXAS, Appellee

Appeal from the 363rd Judicial District Court of Dallas County, Texas. (Tr.Ct.No. F09-60023-W).
Opinion delivered by Justice Lang-Miers, Justices O'Neill and FitzGerald participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered November 14, 2012.

ELIZABETH LANG-MIERS
JUSTICE